**DOUBLE-E SPORTSWEAR CORP.**

v.

**GIRARD TRUST BANK.**

**Civ. A. No. 71–867.**

United States District Court,
E. D. Pennsylvania.

May 26, 1972.

————◆————

Michael Floyd, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

Peter C. Paul, Rawle & Henderson, Philadelphia, Pa., for plaintiff.

### MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is the defendant's Motion for Summary Judgment, Fed.R.Civ.P. 56, 28 U.S.C. The case involves a written Agreement dated March 24, 1971 (Agreement) concerning the sale by defendant to plaintiff of woolen goods.

Fed.R.Civ.P. 56(c), 28 U.S.C., authorizes the granting of Summary Judgment on behalf of the moving party if the record in the case establishes "that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". It is clear that summary judgment may be an appropriate method of adjudicating the parties' rights and obligations under a written contract. New Wrinkle, Inc. v. Armitage & Co., 238 F.2d 753, 757 (3d Cir. 1956).

Plaintiff is a New York corporation having its principal place of business at 1225 Broadway, New York City, New York.

The defendant is Girard Trust Bank (Girard), a banking corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal place of business at 1 Girard Plaza, Philadelphia, Pennsylvania.

On or about March 24, 1971, the plaintiff and defendant entered into an Agreement for the sale of certain finished or partially finished knitted shirts and sweaters (goods) located in Williamstown and Glassboro, New Jersey, at a price of $11.25 per dozen.

Paragraph 10 of the Agreement provided:

"Seller is hereby granted an option to cancel and terminate this Agreement, for any reason whatever, ·provided such option is exercised by notice in writing to that effect forwarded to Buyer together with the sum of $5,000 deposited hereunder on or before April 1, 1971, whereupon all liability from either party to the other shall cease and terminate and this Agreement shall become null and void."

Paragraph 11 of the Agreement provided:

"Any and all notices required to be given by either party to the other shall be in writing and forwarded by certified or registered mail return receipt requested with postage prepaid and if intended for Seller c/o Drinker Biddle & Reath, attention Bruce D. Shuter, 1100 Philadelphia National Bank Building, Philadelphia, Pennsylvania 19107 and if intended for Buyer c/o Langberg & Ringel, 111 Broadway, New York, New York, 10006.

A notice shall be deemed sufficiently given when deposited in the United States post office or branch post office on or before the date herein limited therefor."

Although the exact quantity of the goods involved was undetermined upon execution of the contract, both parties clearly acknowledge in writing that the price of the goods would exceed ($500.-00) five hundred dollars.

On March 31, 1971, the defendant advised plaintiff's attorney that defendant had received an offer from a third party, subsequently identified as Burnette Textiles Company (Burnette) to purchase the goods for a price of approximately $14 per dozen. The interjection of Burnette precipitated further negotiations as to price between representatives of Girard and the plaintiff. Accepting the truth of the facts as set forth in plaintiff's pleading and affidavits, this led to the modification of the March 24, 1971 Agreement. That modification provides as follows:

"March 31, 1971
Gerard Trust Bank (sic)
1 Gerard Plaza
Philadelphia, Penna., 19101
Att: Mr. William T. Spahr, Jr.
Dear Mr. Spahr:

On March 24, 1971, we as Buyer, entered into an agreement with you as Seller, for the sale by you to us of certain goods and other articles therein described at a price of $11.75 per dozen for said goods payable as therein provided.

The said agreement granted you option to cancel and terminate the same on or before April 1, 1971 pursuant to the provisions of paragraph 10 thereof.

You have advised us, this day, that you have received a bona fide offer for said goods of $14.00 per dozen.

You have further advised us that you are requesting sealed bids from us and the other offeror and the person making the highest bid would become the purchaser from you of said goods.

This will confirm our understanding as follows:

1. If another person, firm or corporation submits to you a sealed bid in addition to ours, on or before April 1, 1971, the goods will be sold to the person making the highest bid, in said sealed bid.

2. If no person, firm or corporation shall submit to you a sealed bid on or before April 1, 1971, the goods will be sold to us at the rate of $14.00 per dozen.

3. If we are the highest bidder in the event of (1) or if there be no other sealed bidder and we shall be the purchaser of said goods, the purchase shall be upon all of the terms, covenants and conditions of the agreement between us dated March 24, 1971 except (a) price which shall be our bid if it be the highest, or $14.00 per dozen if there be no other sealed bid, and (b) paragraph 10 of the said agreement dated March 24, 1971 shall be deemed eliminated from the agreement.

4. If the sealed bid of another person, firm or corporation shall be higher than ours, then it is understood that you will be deemed to have exercised option to cancel the agreement dated March 24, 1971 and you will return to us the deposit made under said agreement.

5. Your consent appended hereto shall constitute acknowledgment of receipt of our sealed bid and to the provisions above set forth.

Very truly yours,
DOUBLE E SPORTSWEAR CORP.
BY: Lawrence Ewall
SECRETARY
WE DO HEREBY CONSENT AND AGREE TO THE FOREGOING:
GERARD TRUST BANK (sic)
BY: _____
Assistant Treasurer         "

Plaintiff's attorney read the March 31, 1971 letter agreement over the telephone to the defendant's representatives. The defendant's representatives indicated that it was not necessary to have the agreement signed that day, and that if plaintiff's representative would appear at the defendant's office on April 1, 1971 with the sealed bid and letter agreement it would accept the bid and sign the letter agreement on behalf of the defendant. At or about 9:00 a. m. on April 1, 1971, plaintiff received a telephone call from the defendant's representative, and was informed that the goods had been sold to the other offeror at $14.00 per dozen. When plaintiff's representative appeared at the defendant's office, defendant refused to accept the sealed bid or sign the letter agreement. The plaintiff received on or about April 5, 1971, a registered letter containing a written notice that defendant was exercising its option in accordance with paragraph 10 of the March 24, 1971 Agreement to cancel and terminate the Agreement and returning the sum of $5000 deposited by plaintiff upon execution of the Agreement.

The Court's jurisdiction in this case is based solely on diversity of citizenship, and so we must look to applicable state law. For purposes of this memorandum, the applicable Pennsylvania law will be referred to.

This case involved a contract for the sale of goods within the meaning of the Uniform Commercial Code—Sales. 12A P.S. §§ 2–105, 106.

12A P.S. § 2–201 provides as follows: "Formal Requirements; Statute of Frauds

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing"

It is undisputed that the defendant never signed any Agreement embodying the modification alleged by plaintiff.

Plaintiff contends that there is a genuine issue of fact in this case, namely, whether or not the Bank waived its right to terminate the sales contract. It is asserted that the Statute of Frauds defense is inapplicable to this case because of 12A P.S. § 2–209. That section provides as follows:

"Modification, Rescission and Waiver

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the Statute of Frauds section of this Article (Section 2–201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."

The issue raised by this assertion is whether the conversations between the plaintiff and defendant on March 31, 1971, embodied in the letter agreement of the same date, constitute a waiver of the defendant's right to terminate the March 24, 1971 Agreement.

1 Anderson, Uniform Commercial Code 2d Ed., interprets § 2–209(4) (5) as follows:

"§ 2–209:8 Defective modification or rescission as a waiver.

A modification or rescission may be inoperative because it fails to meet the formal requirements imposed by the Statute of Frauds (if the contract, as modified, comes within the Statute of Frauds) or by a clause of the original contract. But even if this is so, the agreement may nevertheless be effective as a waiver, without regard to whether there has been reliance thereon."

Anderson further states:

"The question of reliance on a waiver becomes important only when it is sought to retract the waiver." (F.N. 9, § 2–209)

"§ 2–209:9—Retraction of waiver.

The Code gives the party who has made a waiver the right to withdraw the waiver by reasonably notifying the other party that adherence to the terms of the contract will be insisted upon. Certain limitations upon the right of retraction exist:

(1) Waiver. By definition only a waiver may be retracted. There can-

not be a retraction of an agreement between the parties as that would amount to a unilateral repudiation of the agreement between the parties.

(2) Notice. There can be no retraction unless reasonable notice is given to the other party that strict adherence to the waived term will be required.

(3) Estoppel. There can be no withdrawal when the circumstances are such as to estop the party from withdrawing."

An attempt at modification which does not satisfy the Statute of Frauds can operate as a waiver. Here, the defendant exacted from the plaintiff a promise to pay a higher price for the goods. Defendant agreed to forego its right to terminate as expressed in the March 24, 1971 agreement. Accepting the truth of plaintiff's allegations, the conduct of defendant would constitute a waiver of its right to terminate the March 24, 1971 agreement. The defendant having expressly consented to the oral modification, absent retraction, is now bound to the new terms.

Section 2–209(5) permits the retraction of a waiver by reasonable notice to the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position by plaintiff in reliance on the waiver.

12A P.S. § 1–201(25) provides as follows:

"A person has 'notice' of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

12A P.S. § 1–201(26) provides as follows:

"A person 'notifies' * * * another by taking such steps as may be rea-sonably required to inform the other in ordinary course whether or not such other party actually comes to know of it."

When the defendant's representative called plaintiff's attorney and notified him that the goods had been sold to another party, and defendant subsequently refused to accept plaintiff's sealed bid, or sign the letter agreement, this was effective notice to the plaintiff that defendant was reasserting its right to terminate the March 24, 1971 contract. Unless the plaintiff materially relied upon the alleged understanding there is no reason to impose upon the defendant a waiver of its right to terminate. Plaintiff's claim of reliance is that they believed and relied upon the promises of Girard's officer and attorney; that this reliance is manifest by their failure to send a representative from New York to Philadelphia to have the waiver agreement executed; that plaintiff agreed to pay a higher price for the goods; that plaintiff did in fact submit a bid to the defendant for $15.50 per dozen; that plaintiff changed its position by agreeing to pay more money for the goods. Plaintiff may have relied upon defendant's representation, however, we find no merit to plaintiff's claim of material change in position. Plaintiff never claims that it entered into any contractual commitment, expended any funds, or otherwise economically relied upon the alleged oral telephone conversations. Even under the agreement as modified, plaintiff could not know prior to the bidding whether it would be successful. Any economic reliance under these circumstances would have been unreasonable. Under the circumstances of this case it could reasonably be found that the retraction by the defendant was made prior to a material change in position by the plaintiff. There remains, however, the central issue of whether the defendant gave timely notice of termination of the March 24, 1971 agreement. The question of timeliness of the

notice as specified in paragraphs 10 and 11 of the March 24, 1971 agreement is a fact question in dispute. Summary Judgment is thus, inappropriate at this time.